IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Donald Gay, ) | |
| ) | Civil Action No. 3:07-4006-CMC-JRM |
| Petitioner, ) | |
| ) | |
| vs. ) | |
| ) | |
| ) | |
| Anthony Padula, Warden of Lee CI, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Respondent. ) | |
| ) | |

Petitioner, Donald Gay ("Gay"), is an inmate at the South Carolina Department of Corrections serving a sentence of life imprisonment for murder. He filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging that he is in custody in violation of the Constitution of the United States. The case was automatically referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02 (B)(2)(c), DSC. Respondents filed a motion for summary judgment, supported by copies of portions of the state court record, on February 15, 2008. Because petitioner is proceeding pro se, an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued on February 21, 2008, advising petitioner of his responsibility to properly respond to the motion for summary judgment. Petitioner filed his response on March 4, 2008.

**Background and Procedural History**

Gay was convicted of murder in Richland County. He was represented at trial by Jeffrey Bloom and Katherine Hudgins. A direct appeal was filed through the South Carolina Office of Appellate Defense raising the following issues:

1. The judge erred by granting the state's motion to redact portions of appellant's statement to Investigator Rice where appellant answered questions about Metz. This evidence was offered by the state, and not

>   appellant. The redaction in this case was unfair to appellant since it left a misleading impression. Rule 106, SCRE, mandated the admission of the entire statement for its context to be understood.
>
> 2. Evidence that Metz admitted hitting the victim on the day she died, that he threatened to kill her on two different occasions that day, that he had bruised knuckles the following day, and admitted having sex with the victim should have been admitted. Its exclusion denied appellant due process, and his right to present a complete defense.
>
> 3. The judge erred by admitting the photograph of the victim holding hands with her boyfriend that was taken a few years before the homicide in this case. *State v. Livingston* was decided prior to the trial in this case, and it mandated the exclusion of this photograph that was meant to garner sympathy for the victim, and appeal to the passions of the jury.
>
> 4. The judge erred by ruling that a life sentence for murder was mandatory in this case. The amendment permitting a thirty year prison sentence for murder went into effect prior to appellant's sentencing, and appellate could have been sentence to thirty years imprisonment.

(Res. Mem., Ex. 3).

The State formulated a counter-statement of issues for appeal in its brief (Res. Mem., Ex. 4). The South Carolina Supreme Court affirmed Gay's conviction. See State v. Gay, 343 S.C. 543, 541 S.E.2d 541 (2001), *partially abbrogated by* Holmes v. South Carolina, 547 U.S. 319 (2006). The Remittitur was returned on February 9, 2001 (Res. Mem., Ex. 6). In its opinion, the Supreme Court summarized the evidence produced at trial as follows:

>   On December 31, 1995, the partially-clothed body of fifty-year-old Patricia Huffstetler ("victim") was discovered in the tunnel below Interstate 26, near Elmwood Avenue in Columbia ("the tunnel"). She had been stabbed four times in the chest. Approximately 20 feet from the body, there were signs of a struggle, a pair of broken eyeglasses, and drag marks which led to the body.
>
>   As part of the investigation, Detective Robert Benson was questioning people at the Salvation Army on January 3, 1996. Appellant approached Detective Benson saying that the detective would want to talk with him. Because of the late hour, Detective Benson asked appellant to come to the police station the next day. Appellant arrived at the station the following morning, and Detective Steve Rice interviewed appellant. Appellant gave Detective Rice a statement in which appellant

said that he knew the victim and had last seen her a few days before Christmas. Appellant denied that he had ever been physically involved with the victim.

After hearing about the victim in the news on New Year's Day, the victim's former boyfriend, Greg Hiers, contacted police. Hiers told Detective Benson that, based on information from his Caller ID, he believed the victim had called him from a pay phone at 10:59 a.m. on December 31. Hiers also testified that he and the victim had problems with alcohol, they had met at an Alcoholics Anonymous meeting, and after he went to jail for a DUI conviction, the victim began living with Louis Metz.

The pay phone was located outside an Exxon station on Elmwood Avenue. On January 4, 1996, Detective Rice obtained the surveillance tape from the convenience store at the Exxon station for the day of December 31, 1995. That evening, Detective Rice viewed the videotape which showed the victim, together with appellant, in the convenience store from 10:48 to 10:52 a.m. Detective Rice testified that he recognized appellant because he had just interviewed him that morning.

Realizing that appellant had lied about when he last saw the victim, the police located appellant and again questioned him at the station. After being confronted with the videotape, appellant initially denied, but then admitted the tape reflected that he and the victim were together the morning of December 31.

Police searched appellant's room at the Salvation Army. In the room, police seized three trash bags and a duffel bag. Appellant was not in the room at the time police conducted their search. There were six bunks in the room; with the exception of one, all the beds were occupied when police arrived. Police concentrated their search in and around the unoccupied bed. The trash bags had papers with appellant's name on them, thus indicating that the belongings were his. A damp, black sweatshirt was retrieved from one of the bags. From the videotape, appellant appeared to be wearing a black sweatshirt on December 31. In addition, police discovered a knife under the pillow of the unoccupied bunk.

The State presented evidence that robbery was appellant's motive for the crime. In the videotape, the victim paid for her purchase at the Exxon convenience store from a white purse, and the cashier testified that the victim paid with a $50 or $100 bill. The police discovered the white purse, without any money in it, in a cemetery located between the Exxon and the tunnel. Police searched appellant's car and found a bill of sale for the car dated January 3, 1996. The seller of the car testified that appellant had purchased the car for $270, using mostly large bills.

In addition, the State presented evidence which linked appellant to the knife discovered on the bunk at the Salvation Army. Walter Armstrong testified that approximately four years before trial he gave appellant a knife similar to the one

discovered and that he saw appellant with the knife as recently as November 1995. The pathologist testified that the knife was consistent with the weapon which caused the victim's stab wounds.

Finally, the State presented significant forensic evidence linking appellant to the crime. An expert in shoe print identification stated that appellant's Nike sneakers were consistent with a shoe print found near the body in the tunnel. An expert in trace evidence testified that a hair from inside the victim's coat was consistent with appellant's hair. An expert in forensic serology testified that blood stains found on appellant's jacket and his black sweatshirt were consistent with the victim's blood type and also stated that human blood was found on the knife.

Furthermore, an expert in DNA analysis testified that the blood found on the black sweatshirt matched the victim's DNA blood profile. The DNA expert also testified that semen found inside the victim's body matched appellant's DNA profile. Semen found outside the victim's vaginal area was analyzed and found to be a mixture of appellant's and another unknown male's semen. In the DNA expert's opinion, the blood on appellant's sweatshirt was the victim's blood and the semen was from appellant.

Gay filed an application for post-conviction relief ("PCR") on February 13, 2001 ("Gay I"). (App. 796). Gay was originally represented by Tara D. Shurling. She was relieved due to a conflict of interest, and Charlie J. Johnson, Jr. represented Gay at the evidentiary hearing held December 2, 2003. (App. 805). The PCR court issued an order of dismissal on June 14, 2004. A petition for writ of certiorari was filed through the South Carolina Office of Appellate Defense raising the following issue:

Did the PCR court err in denying petitioner's allegation that trial counsel erred in failing to present an alibi defense via the calling of alibi witnesses in the case?

The petition for writ of certiorari was denied by the South Carolina Court of Appeals on March 26, 2007. (Res. Mem., Ex. 9). Gay did not seek further review by the South Carolina Supreme Court, and the Remittitur was returned on April 12, 2007.

On May 23, 2007, Gay filed a second PCR ("Gay II") in which he asserts that he is entitled to a new trial based on "newly discovered evidence" pursuant to S.C. Code Ann. § 17-27-45(c).

(Res. Mem., Ex. 11). In <u>Gay II</u>, Gay makes several arguments relating to the exclusion of "Hispanic-Mexicans and Puerto-Ricans and Cuband" (sic) from the Grand Jury process. The State made a return arguing that <u>Gay II</u> should be dismissed because it is successive and violates the state statute of limitations. (Res. Mem., Ex. 12). <u>Gay II</u> is pending in the Richland County Court of Common Pleas.

## Grounds for Relief

In the present petition, Gay asserts that he is entitled to a writ of habeas corpus on the following grounds:

> **GROUND ONE**:       Ineffective counsel/alibi defense.
>
> **SUPPORTING FACTS**:    Did not challenge Arrest Warrant at Trail (sic). On alibi defense waitted (sic) for witnesses to move. Did not look for none. If they would have looked I had one adult + one child at the time of court sitting behind me and counsel.
>
> **GROUND TWO**:       Newly discovery evidence.
>
> **SUPPORTING FACTS:**   No Hispanics-Mexicans on Jury that do pay taxes and two (2) types of DNA, only one was identify in the lab report L96-0001 pg 2.

If restated, Gay presents four claims:

1. Ineffective assistance of trial counsel for failing to challenge the arrest warrant;

2. Ineffective assistance of trial counsel for failing to investigate and present an alibi defense;

3. Violation of equal protection and due process by excluding Hispanics from the Grand Jury; and

4. The State should be required to investigate and identify the source of the semen that was found outside the victim's vaginal area.

## Motion to Amend

5

On March 27, 2008, Gay filed a "Motion to Amend to Writ of Habeas Corpus." Respondent filed a memorandum opposing any motion to add new claims to the petition on April 10, 2008. The purpose of Gay's motion is unclear because it does not clearly state that he wishes to add an additional claim or specify what that new claim may be. It appears that Gay wishes the Court to consider a case he has not previously cited, Raygoza v. Hulick, 474 F.3d 958 (7th Cir. 2007) (defense counsel ineffective for failing to investigate alibi defense). If this is Gay's purpose, no amendment of the petition is necessary. Insofar as Gay wishes to assert any claim not contained within his petition, his motion should be denied pursuant to Fed. R. Civ. P. 15(a).

## Discussion

Of the four grounds for relief restated above, only one has been properly exhausted. Gay presented his claim that his attorney was ineffective for failing to investigate and present an alibi defense to the South Carolina Supreme Court in his petition for writ of certiorari following denial of his PCR application. (Res. Mem., Ex. 7). Restated grounds three and four are contained in Gay II presently pending in state court. (Res. Mem., Ex. 11).[1]

Gay has presented this court with a "mixed petition," i.e., a petition that includes both exhausted and unexhausted grounds for relief. Previously, a mixed petition was subject to dismissal to allow "total exhaustion" before proceeding in this court. Rose v. Lundy, 455 U.S. 509 (1982). The enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") in 1996, which contained a one-year statute of limitations to file petitions in this court after the inmate's conviction became final, created a quandary for petitioners who filed mixed petitions. Dismissal for the purpose of total exhaustion could result in forfeiture of a prisoner's right to federal review

---

[1] The undersigned notes that a copy of Gay's pleading discussing his claims in Gay II is attached to his present 2254 petition.

for violation of the AEDPA's statute of limitations. The United State Supreme Court addressed this problem in <u>Rhines v. Walker</u>, 544 U.S. 269 (2005). The Court held that district courts have discretion to stay habeas petitions in "limited circumstances, i.e., where the record supports a finding that "there was good cause for the petitioner's failure to exhaust the claims first in state court" and the state claims are "potentially meritorious." A stay is not appropriate where a petitioner has engaged in "abusive litigation tactics or intentional delay." <u>Rhines</u> also held that, "if a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and proceed with the exhausted claims if the dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief." <u>Id</u>. at 278.

On July 28, 2008, the Honorable Cameron McGowan Currie, United States District Judge, filed an order explaining the <u>Rhines</u> option to Gay and requiring him to notify the court if he wished to "withdraw his unexhausted claims (the claims that are included in his currently pending PCR action) or notify this court that he wishes to proceed with his petition as it is currently presented." The court received Gay's response on August 4, 2008, which stated:

> I (Donald Gay #244300) respectfully withdraw my federal habeas corpus so that I may file another as soon as I exhaust my state remedies.

Gay apparently did not understand the court's explanation of <u>Rhines</u>. Voluntary dismissal of the petition would likely result in Gay being unable to obtain any federal review of any of his claims. Therefore, the undersigned construes Gay's response as an indication that he wishes to withdraw his unexhausted claims so that his exhausted claim might be reviewed.[2]

---

[2] If Gay disagrees with this procedure, he can inform the court in his objections to this Report and Recommendation. (See attached notice).

Gay's sole exhausted claim is that trial counsel was ineffective in failing to investigate and present an alibi defense (Grounds 1 and 2 restated above).

Since Gay filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir.), *cert. denied,* 521 U.S. 371 (1998) and Green v. French, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999). That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has addressed procedure under § 2254(d). See Williams v. Taylor, 529 U.S. 362 (2000). In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1).

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases .... A state- court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent.
>
> * * *
>
> [A] state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the] Court's precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should

> not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Id. at 1519-20. Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) quoting Strickland, *reversed on other grounds*, 476 U.S. 28 (1986). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> * * *
>
> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added).

9

Strickland at 694-95.

Under the AEDPA, a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The court's analysis should center on whether the state courts properly applied the Strickland test. See Williams v. Taylor, 529 U.S. 362 (2000). ("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.")

An attorney has a duty to make a reasonable factual and legal investigation to develop appropriate defenses. Sneed v. Smith, 670 F.2d 1348 (4th Cir. 1982). The reasonableness of the investigation is evaluated by the totality of the circumstances facing the attorney at the time. Bunch v. Thompson, 949 F.2d 1354 (4th Cir. 1991), *cert. denied*, 505 U.S. 1230 (1992). The Courts recognize limits to investigation based on time, resources, and relevance and conclude that "Strickland does not impose a constitutional requirement that counsel uncover every scrap of evidence that could conceivably help their client." Green v. French, 143 F.3d 865, 892 (4th Cir. 1998), *abrogated on other grounds* by Williams v. Taylor, 529 U.S. 362 (1998). A decision not to investigate a particular avenue of defense is assessed by the same standard of "reasonableness in all the circumstances" by which an attorney's performance is measured in other areas. Strickland, 466 U.S. 690-91. A petitioner asserting a claim of ineffectiveness of counsel in failing to investigate must make a showing that the failure was prejudicial. Generally, the failure to investigate and present a potential alibi witness supports a claim of ineffective assistance of counsel. However, at the PCR hearing, the petitioner must present evidence establishing what the witness would have said at trial. Bassette v. Thompson, 915 F.2d 932 (4th Cir. 1990), *cert. denied*, 499 U.S. 982 (1991).

Gay did not present his alibi witnesses to testify at the PCR hearing. Trial counsel (Bloom) testified that he investigated Gay's alibi defense and the witnesses were present at trial. Further, counsel and Gay discussed the potential defense including the pitfalls.[3] Bloom testified that Gay decided against presenting the alibi defense.

The PCR court found:

> In light of the testimony presented at the evidentiary hearing and the record of the prior proceedings, this Court finds that the Applicant failed to carry his burden of proof in showing ineffective assistance of counsel. The record and testimony at the hearing support the fact that the Applicant was made aware of the benefits and detriments of an alibi defense prior to trial and that the applicant made a knowing and intelligent decision not to present an alibi defense. Further, this Court finds that, though trial counsel did not file a motion for alibi defense, no prejudice to the Applicant resulted for two reasons: first, because the witnesses who would have testified to the alibi were known to the prosecution and thus those witnesses would most likely have been allowed to testify, and second, because the Applicant never requested counsel to pursue an alibi defense. Moreover, Applicant has failed to establish prejudice from counsel's conduct respecting the alibi witnesses when the witnesses did not testify at the post-conviction relief hearing.

The undersigned concludes that the PCR court properly applied the Strickland test to Gay's claim. Gay and Bloom made a tactical decision not to present the defense. In Sexton v. French, 163 F.3d 874, 885 (4th Cir. 1998), *cert. denied*, 528 U.S. 855 (1999). the Court differentiated the types of decisions which must be made by criminal defense counsel.

> There are essentially two categories of decisions made by a criminal defendant's trial counsel: those decisions, deemed "personal," that must be made with the defendant's consent and those that may be made without the defendant's consent. Decisions that may be made without the defendant's consent "primarily involve trial strategy and tactics," such as "what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed." The decisions that must be made with the defendant's consent include the decision to enter a guilty plea, the decision to waive a jury trial, the decision to pursue an appeal, and,...the decision to testify at trial. (Citations omitted).

---

[3] One of the witnesses was of doubtful credibility, and Gay would have had to testify and be cross-examined about a prior conviction for assault and battery of a high and aggravated nature.

11

When considering a claim of ineffective assistance of counsel based on tactical decisions "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland v. Washington, 466 U.S. at 689. Thus, courts are instructed not to second guess an attorney's trial strategy and tactics. Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir. 1977); Stamper v. Muncie, 844 F.2d 170 (4th Cir. 1991).

## Conclusion

Based on a review of the record, it is recommended that: (1) petitioner's motion to amend be denied, and (2) that respondent's motion for summary judgment be granted.

    Respectfully submitted,

    s/Joseph R. McCrorey
    United States Magistrate Judge

August 6, 2008
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).